## J. P. ROBERTSON v. STATE.

No. A-5814. Opinion Filed April 30, 1927.
(255 Pac. 715.)

Morgan, Osmond & Morgan, for plaintiff in error.

Edwin Dabney, Atty. Gen., and Smith C. Matson, Asst. Atty. Gen., for the State.

DAVENPORT, J. The plaintiff in error, hereinafter called the defendant, was convicted in the county court of Caddo county, state of Oklahoma, on a charge of intentionally, willfully, and unlawfully playing in a certain game commonly called poker, played with a deck of cards, and at which game so played money was then and there bet, won, and lost, contrary to the form of the statute in such cases made and provided, and against the peace and dignity of the state of Oklahoma.

To the information the defendant entered his plea of not guilty. A jury was impaneled and trial had, and the jury found the defendant guilty, and assessed his punishment at 30 days in jail and a fine of $100. Motion for a new trial was filed, considered, and overruled by the court, and defendant reserved an exception. To reverse the judgment and sentence the defendant has appealed to this court.

Defendant has assigned fourteen errors alleged to have been committed by the court in the trial of his case. After a careful consideration of the record, the only assignments it is deemed necessary to consider are assignments 1 and 5, which are as follows:

"(1) The court erred in overruling the motion of plaintiff in error for a new trial."

"(5) The verdict of the jury is contrary to law; is contrary to the evidence; and is contrary to the law and the evidence."

In order to properly consider the assignments set out and to search the proper conclusion as to the contention of the defendant, it is necessary to set out in this opinion a summary of the testimony of the witnesses as disclosed by the record. T. C. McCullough, called as a witness on behalf of the state, stated:

"I know the defendant, J. P. Robertson, when I see him. On the 9th day of November, 1924, I saw him. He was sitting crosslegged on the north side of a blanket with some cards in his hands. He was looking at the cards. I did not see him make any bet or anything like that at the time, nor did I see any money on the blanket. Myself, the McAnallys, Flansburg, Henry Rupp, Lindsey Morgan, and Hawkins went to the premises of the defendant. It was the first time I had been in that section of the country. I would say that the defendant was on the north side of a blanket that was spread down. I did not get any of the cards or the money. Most of the parties with me had guns. We had no search warrant or warrant for any one that was at the place where I saw the defendant so far as I know. I live about 15 miles from the scene of action. We were all notified to get together at Mr. McAnally's house on Sunday morning. They claimed they were going down to look for a still. There was 14 or 15 in the party. I don't know how many shots were fired. These parties were sitting on a blanket, and our party approached in line close together, and when we got near them some one hollowed 'Hands up!' and shortly

thereafter some of the parties in our crowd began shooting. I was pretty close when the defendant was shot. I was probably 30 or 35 feet from him."

A. A. Flansburg, Henry Rupp, Willie McAnally, Lindsey Morgan, Dave Corbin, Ira McAnally, Harve McAnally, John Bates, and others, witnesses called by the state, testified in substance as did McCullough. All admitted that they were not looking for any of the parties they saw when they came upon defendant, and there is no testimony showing that this defendant was playing at any kind of game and betting money; the only testimony being that he was present there where there were cards on the blanket and other parties were with him. The witnesses for the state agree that no one had a search warrant, agree that no one had a warrant for either of the other parties there, and did not have a search warrant to enter upon the premises of the defendant, and that they never saw the defendant bet any money or play any cards.

A careful examination of the evidence in this case only tends to create suspicion or a possibility that the defendant might have been engaged in playing cards, but there is no evidence whatever that he had played any cards in a game of poker or any other game at cards.

Where there is evidence to support the verdict, this court will not pass upon its weight and sufficiency in order to determine whether or not the defendant is guilty as charged, but we hold there must be evidence tending to support the essential allegations of the information.

The case is reversed and remanded, with directions to dismiss.

DOYLE, P. J., and EDWARDS, J., concur.